IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS E. OWENS and DONNA    )
OWENS,                                )
                Plaintiffs,     )
                                )
     vs                       )     Civil Action No. 12-1081
                                )
JP MORGAN CHASE BANK and    )
RESIDENTIAL CREDIT SOLUTIONS,  )
               Defendants.    )

**<u>MEMORANDUM OPINION</u>**

## I.    INTRODUCTION

Now pending before the Court is Defendant's, Residential Credit Solutions', Motion to Dismiss Plaintiffs' Amended Complaint. [ECF No. 25].  For the reasons that follow, Defendant's Motion is granted.

## II.    BACKGROUND

In or about 1996[1], Plaintiffs obtained a mortgage loan on their personal residence through EMC Mortgage Corporation. Am. Compl. [ECF No. 18] at ¶¶ 5, 14.  Plaintiffs filed a Chapter 13 Bankruptcy in the Western District of Pennsylvania on or about March 30, 2006. *Id*. at ¶ 13.  At the time the bankruptcy was filed, EMC Mortgage Corporation ("EMC") owned and serviced the loan. *Id*. at ¶ 14; Pl.'s Bankruptcy Claim Form [ECF No. 18-2].  Although the specific date was not included in the Complaint, sometime after Plaintiffs filed for Chapter 13 Bankruptcy, Defendant JPMorgan Chase Bank ("JPMorgan Chase") became the owner and servicer of Plaintiffs' mortgage loan. Am. Compl. [ECF No. 8] at ¶ 11.  Plaintiffs allege that they made all

---

[1]    Although Plaintiffs' Amended Complaint alleges that the mortgage was acquired in or about 1998, the Bankruptcy Claim Form submitted by Plaintiffs state that the debt was incurred on 10/29/1996. Pl.'s Bankruptcy Claim Form [ECF No. 18-2].

of the payments due under the Chapter 13 Plan, and as a result, on October 27, 2011, the Bankruptcy Court entered an Order that cured Plaintiffs of "any and all monetary defaults as of the payment date for which the Trustee last made a distribution, and no additional interest, late fees, or penalties may be assessed for time periods or payments due prior to that date." *Id*. at ¶ 21; 10/27/11 No. 06:21929 United States Bankruptcy Court Order.  On or about May 1, 2012, Residential Credit Solutions ("RCS") obtained servicing rights of the mortgage loan from JPMorgan Chase. Am. Compl. [ECF No. 18] at ¶ 10.

After Plaintiffs filed their bankruptcy claim in 2006, EMC filed a proof of claim wherein EMC claimed the mortgage was in arrears and provided the monthly payment under the Chapter 13 plan. *Id*. at ¶ 14.  Plaintiffs allege that EMC's proof of claim "stated a contractual monthly payment due of $463.13, . . . provided a detailed breakdown of the claimed arrears and total indebtedness . . . [and] included a claim for 'escrow advances.'" *Id*. ¶¶ 15-16.  Plaintiffs also allege that during the bankruptcy proceedings while EMC remained as the owner and servicer of Plaintiffs' mortgage loan, "EMC did not file a Notice of Mortgage Payment Change, nor did EMC provide notice of any changes in the monthly payment to the Court or to the Chapter 13 Trustee." *Id*. at ¶ 17.  Plaintiffs further allege that no party objected to the cure of Plaintiffs' mortgage and the bankruptcy has closed. *Id*. at ¶ 22.

In or about July 2011, Plaintiffs allege they resumed making monthly mortgage payments, but Defendants informed Plaintiffs that the mortgage payments were insufficient because they failed to account for "escrow shortages." *Id*. at ¶ 25.  Plaintiffs allege that despite the claim of escrow shortage, neither JPMorgan Chase nor RCS filed "a Notice of Mortgage Payment Change, or an Amended Proof of Claim, or any other document substantiating their claim of a post-petition/pre-closing escrow shortage, [and did not inform] the Court of any

2

changes to escrow at all." *Id*. at ¶ 27.   Plaintiffs allege that on many occasions, the payments remitted were returned without being credited to their account. *Id*. at ¶ 36.   Plaintiffs also allege they have paid an amount of $3,033 to the Defendants as a good faith cure to any post-discharge arrears and to make the mortgage current. *Id*. at ¶ 38.   Plaintiffs claim that Defendants deposited the check, but refuse "to acknowledge receiving the check or accounting for that check in a notice to accelerate the debt." *Id*.

Plaintiffs brought the instant action on July 31, 2012 against JPMorgan Chase and RCS alleging that (1) RCS violated the federal Fair Debt Collection Practices Act ("FDCPA") by, *inter alia*, "falsely representing the character, amount, and legal status of the debt[,]" implicating that the failure to make payments would result in foreclosure, using false representations to collect late fees, increasing the escrow amount, and attempting to collect unauthorized fees; (2) that RCS and JPMorgan Chase violated the Bankruptcy Court's Order and should be found in contempt under 11 U.S.C. § 105(a); (3) that JPMorgan violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); and (4) RCS and JPMorgan violated the Real Estate Settlement Procedures Act ("RESPA"). *See id*. at ¶¶ 40-71.

RCS filed the instant Motion to Dismiss arguing that Counts 1 (FDCPA), 2 (contempt for violating the Bankruptcy Court's Order) and 4 (RESPA) of Plaintiffs' Amended Complaint should be dismissed with prejudice as Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) against RCS.   Specifically, as to the claim under the FDCPA, RCS argues that it is not a "debt collector" as defined by the Act for liability to attach. Def.'s Br. in Support of Mot. to Dis. [ECF No. 26] at 4.   As to the contempt claim, RCS contends that it is not a creditor as defined by the Bankruptcy Code that could subject it to liability. *Id*. at 6.   Lastly, RCS contends that it cannot be liable under RESPA because Plaintiffs did not send it a "qualified

written request" as required by the statute. *Id*. at 8.

## III.   JURISDICTION

Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiffs advance claims under The Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1601, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §2601, *et seq.* and the Bankruptcy Code 11 U.S.C. § 101 *et seq.*   Similarly, the Court may exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 of the state law claims arising under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 Pa.C.S.A. § 201-1 *et seq.*   Additionally, all parties have consented to jurisdiction to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c).   Accordingly, this Court has the authority to decide dispositive motions and to eventually enter final judgment.

## IV.   STANDARD OF REVIEW

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must " accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).   Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).   Allegations of the complaint must be factually grounded to move the claim from the realm of mere possibility to one that "is plausible

4

on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).   Under the post

*Twombly/Iqbal* standard, civil complaints "must contain more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir.

2009) (internal quotations omitted).

Along with the well-pleaded factual allegations of a complaint, "a court may consider

matters of public record and other matters of which a court may take judicial notice, court orders,

and exhibits attached to the complaint" without converting the motion to dismiss into one for

summary judgment under Federal Rule of Civil Procedure 56. *See West Penn Allegheny Health*

*Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010) (court may consider documents integral to or

explicitly relied upon in complaint); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d

1380, 1385, n.2 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426

(3d Cir. 1997).   Such documents that a court can consider include, *inter alia*, indisputably

authentic documents such as court dockets, opinions and orders "in related or underlying cases

which have a direct relation to the matters at issue." *Golden v. Cook*, 293 F.Supp.2d 546, 551

(W.D.Pa. 2003) (citations omitted). *See also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir.

2007) (transcript of preliminary hearing properly considered under Rule 12(b)(6); *S. Cross*

*Overseas Agency, Inc. v. Kwong Shopping Grp. Ltd*., 181 F.3d 410, 427 (3d Cir. 1999).

## V.   ANALYSIS

### a.   Real Estate Servicing Procedures Act

As a preliminary matter, Plaintiffs agree with RCS's contention that the RESPA claim

should be dismissed with prejudice.   Therefore, Count 4 alleging that Defendant RCS violated

RESPA is dismissed with prejudice.

b. <u>Fair Debt Collection Practices Act</u>

RCS argues that it is not liable under the FDCPA because it is merely the servicer of Plaintiffs' mortgage loan and not a debt collector.

The Court of Appeals for the Third Circuit has consistently held that the FDCPA's provisions "generally apply only to debt collectors." *Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed.App'x 128, 130 (3d Cir. 2009) (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)). Thus, "[c]reditors – as opposed to debt collectors – generally are not subject to the FDCPA." *Pollice*, 225 F.3d at 403. *See also F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) (persons intended to be subject to the FDCPA are "independent debt collectors" and not creditors). The FDCPA broadly defines a "debt collector" as one who attempts to collect debts "owed or due or asserted to be owed or due another." 15 U.S.C. §1692(a)(6). Conversely, a "creditor" is defined as one who "offers or extends to offer credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Thus, creditors are those "who collect in their own name" as opposed to debt collectors who are third party collectors of past due debts.[2] *Check Investors, Inc.*, 502 F.3d at 173.

A creditor's assignee "is also not a 'debt collector' as long as the obligation was not in default at the time of the assignment." *Ruff v. America's Servicing Co.*, 2008 WL 1830182, at *5 (W.D.Pa. April 23, 2008) (citing *Pollice*, 225 F.3d at 403). As such, "when a mortgage-servicing company is servicing a current payment plan rather than demanding payment on a defaulted loan, the mortgage servicer is not subject to the FDCPA." *Id.* (citing *Conklin v.*

---

[2]    The Court of Appeals for the Third Circuit has explained: "The term 'debt collector,' . . . was intended to cover all third persons who regularly collect debts. . . . The Senate Committee explained that the FDCPA was limited to third-party collectors of past due debts because, unlike creditors, 'who generally are restrained by the desire to protect their good will when collecting past due accounts,' independent collectors are likely to have 'no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Check Investors, Inc.*, 502 F.3d at 173 (quoting S.Rep. No. 95-382, at 2, 1997 U.S.C.C.A.N. at 1697).

*Purcell, Krug & Haller*, 2007 WL 404047, at *5 (M.D.Pa. Feb. 1, 2007)).  However, a mortgage servicer will be considered a debt collector under the FDCPA if the mortgage was "already in default at the time the mortgage-servicer began servicing the loan." *Ruff*, 2008 WL 1830182, at *5. *See also Dawson v. Dovenmuehle Mortg., Inc.*, 2002 WL 501499, at *5 (E.D.Pa. April 3, 2002) (the FDCPA "applies to a mortgage servicing company only where the mortgage at issue was already in default at the time when servicing began.").  Therefore, the operative question is whether Plaintiffs' mortgage loan was in default on May 1, 2012, the time that RCS took over servicing Plaintiffs' loan.

Here, in support of their FDCPA claim, Plaintiffs provide only the threadbare legal conclusion that RCS is a "debt collector" as defined under the FDCPA. Am. Compl. [ECF No. 18] at ¶ 12.  Plaintiffs have not alleged that their mortgage was in default at the time RCS became the loan servicer.  To the contrary, Plaintiffs' bankruptcy was closed for approximately one year before RCS obtained the servicing rights, and Plaintiffs claim that once they resumed making the monthly mortgage payments in July 2011, the payments were "timely" and "in fact [Plaintiffs] made payments substantially greater than that provided for in their bankruptcy." *Id*. at ¶ 24.  Plaintiffs have failed to adequately allege that the mortgage was in default at the time RCS obtained the servicing rights; therefore, their claim that RCS violated the FDCPA is dismissed. *See Taggart v. Wells Fargo Mortg. Inc.*, 2012 WL 4462787, at *4 (E.D.Pa. Sept. 27, 2012) (where plaintiff failed to allege that the mortgage was in default at the time the servicer obtained the servicing rights, the servicer was not a debt collector and the FDCPA was inapplicable); *Jobe v. Bank of America, N.A.*, 2012 WL 7849939, at *7 (M.D.Pa. April 20, 2012) (plaintiff failed to allege that his mortgage was in default at the time the servicer obtained the servicing rights and pled the mortgage was current, therefore the FDCPA was inapplicable to servicer); *see Jones v.*

*Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *7 (E.D.Pa. April 22, 2008) (plaintiff supplied "no allegation that the mortgage at issue was in default" at the time defendant obtained servicing rights, therefore the claim under the FDCPA was dismissed); *Dawson,* 2012 WL 501499, at *5 (same).

c.   Contempt Claim for Violation of the Discharge Injunction

Plaintiffs claim that RCS violated the discharge injunction entered by the Bankruptcy Court, invoking 11 U.S.C. § 524, *et seq*., and as a consequence of such a violation, that 11 U.S.C. § 105 "permits this Court to find a party in civil contempt for violation of the Bankruptcy Court's orders including imposition of costs, compensatory damages, penalties, attorney's fees, and injunctive relief." Am. Compl. [ECF No. 18] at ¶ 59.   Plaintiffs are incorrect in their assertion, and this claim is dismissed because 11 U.S.C. § 105(a) does not provide a private right of action for a violation under 11 U.S.C. § 524.[3]

Generally, 11 U.S.C. § 524(i) sets forth a violation of a bankruptcy discharge order.   It states:

> (i)      The willful failure of a creditor to credit payments received under a plan confirmed under this title . . . shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i).   Section 524(a)(2) of the Bankruptcy Code provides:

> A discharge under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of a process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

---

[3]      RCS has failed to address the issue of whether a private right exists in this context.   Its argument that it is not subject to liability under certain sections of the Bankruptcy Code because it is not a "creditor" misses the point.   Nonetheless, whether the Bankruptcy Code has created a private right of action is a jurisdictional question under 28 U.S.C. § 1331, and the Court may address it *sua sponte*. *See generally Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001); *Lewis v. Alexander*, 685 F.3d 325, 338 (3d Cir. 2012); *Chadda v. Mullins*, 430 Fed.App'x 192, 193-94 (3d Cir. 2011).

11 U.S.C. § 524(a)(2).  Thus, the remedy for a violation under section 524 is contempt. *In re Lesniewski*, 246 B.R. 202, 214 (E.D.Pa. 2000).  Plaintiffs argue that through section 105(a), this Court can issue, *inter alia*, an order of contempt against RCS for violating the bankruptcy order. Section 105(a) gives courts the broad power to "issue any order, process, or judgment that is necessary or appropriate to carry out this title." 11 U.S.C. § 105(a).

In *Townsend v. M & T Mortg. Corp.*, 2010 WL 2573825, at *3 (M.D.Pa. June 23, 2010), the court discussed the exact issue of whether section 524 read through the scope of section 105(a) created a private right of action for a violation of a discharge injunction. *Townsend*, 2010 WL 2573825, at *3.  It held that no private right of action existed in this context and dismissed the claim. *Id*. at *4.  In coming to this conclusion, it analyzed applicable cases and observed:

> The Third Circuit has not ruled explicitly on whether section 524(a)(2) creates a private right of action for violation of a bankruptcy court's discharge injunction. In discussing another section of the bankruptcy code, 11 U.S.C. §506(b), however, the appeals court cited approvingly to cases that concluded that section 524(a)(2) contains no private right of action, and that section 105(a) also does not permit an action in district court seeking enforcement of the bankruptcy court's orders. [*In re Joubert*, 411 F.3d 452, 456 (3d Cir. 2005)].  Among other cases, the court cited *Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002), which explored the legislative history of Section 524 and concluded that "we cannot say that Congress intended to create a private right of action under §524, and we shall not imply one." *Walls*, 276 F.3d at 510; *see also Petruso v. Ford Motor Credit Co*., 233 F.3d 417, 423 (6th Cir. 2000) (finding that "§524 does not impliedly create a private right of action"); *Cox v. Zale Delaware Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) (suit for contempt in bankruptcy court only remedy for §524 violation); *Bassette v. AVCO Fin. Servs., Inc*., 230 F.3d 439, 444-45 (1st Cir. 2000) (finding that there is no need to address whether a private right of action exists under Section 524, since the plaintiff had "a remedy . . . readily and expressly available through another section of the Bankruptcy Code, namely §105(a)).  The Third Circuit examined these opinions on Section 524 and found that "[w]e agree with the reasoning of these cases, and see no reason why the rule should be different for actions asserted under §506(b) than §524." *Joubert*, 411 F.3d at 456.  As such, the court concludes that no private cause of action exists pursuant to Section 524 and plaintiff cannot bring a claim in this court based on a violation of the discharge injunction.

*Townsend*, 2010 WL 2573825, at *3.  Moreover, the Court of Appeals for the Third Circuit has

determined that the injunctive power encompassed in section 105(a) "is a power tool, but . . . it operates only within the context of bankruptcy proceedings." *Joubert*, 411 F.3d at 455. Moreover, "§105(a) 'has a limited scope.  It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code." *Id*. at 455 (quoting *In re Cont'l Airlines*, 203 F.3d 203, 211 (3d Cir. 2000)).

Therefore, Plaintiffs must petition the Bankruptcy Court for relief for a violation of section 524.  *See Townsend,* 2010 WL 2573825, at *4.  "[T]he traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as this one." *Petruso*, 233 F.3d at 421.  Defendant's motion to dismiss Plaintiffs' claim is granted and Plaintiffs may not obtain damages, penalties, attorney's fees and costs for RCS's alleged violation of section 524.  Should Plaintiffs seek contempt proceedings or injunctive relief, they "should seek such relief from the appropriate tribunal, the bankruptcy court." *Townsend,* 2010 WL 2573825, at *5.

## VI.    CONCLUSION

For the reasons stated above, Defendant's, Residential Credit Solution's, Motion to Dismiss [ECF No. 25] is granted. An appropriate Order follows.

Dated: May 14, 2013

By the Court,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS E. OWENS and DONNA        )
OWENS,                           )
             Plaintiffs,        )
                                 )
    vs                          )          Civil Action No. 12-1081
                                 )
JP MORGAN CHASE BANK and         )
RESIDENTIAL CREDIT SOLUTIONS,    )
           Defendants.       )

## O R D E R

AND NOW this 14th day of May, 2013, upon consideration of Defendant's Residential

Credit Solutions' Motion to Dismiss [ECF No. 25], Defendant's Brief in Support [ECF No. 26],

Plaintiffs' Brief in Opposition [ECF No. 30], and Defendant's Reply [ECF No. 32],

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED.


<u>s/Robert C. Mitchell</u>
ROBERT C. MITCHELL
United States Magistrate Judge


cc: All counsel of record via CM/ECF